## JOHNS v. COMMISSIONER OF IN-TERNAL REVENUE.

### No. 12859.

United States Court of Appeals, Fifth Circuit.

March 2, 1950.

470

Douglas D. Felix, Miami, Fla., for petitioner.

Melva M. Graney, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, Washington, D. C., John M. Morawski, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., Helen Goodner, Sp. Asst. to Atty. Gen., for respondent.

Before HOLMES, McCORD, and BORAH, Circuit Judges.

McCORD, Circuit Judge.

This appeal involves an alleged deficiency in income tax for the calendar year 1943 in the amount of $16,918.84, and is taken from a decision of the Tax Court entered on October 6, 1948. Title 26 U.S. C.A. § 1141(a).

The sole question presented is whether the Tax Court erred in concluding that petitioner and his wife were not *bona fide* partners for tax purposes during the year 1943, and that the entire net income of the business was therefore taxable to petitioner, instead of one-half to him and the other half to his wife.

The record reveals that petitioner and his wife, Ruby Johns, started a used car business during the latter part of the year 1933 in Miami, Florida. The business was begun with a small sum of money borrowed from a local finance company and an additional sum raised by Ruby Johns from pawning her jewelry. Petitioner and his wife together used the money to purchase a fire-damaged automobile. They had this car towed to the back yard of their home and repaired it together. Mrs. Johns ground the valves while petitioner straightened the fenders and prepared the car body for painting, and they painted it together. When the repairs were completed, they sold the reconditioned car at a profit, repaid the loan, and the finance company helped them purchase another car. That car was likewise reconditioned and sold at a profit by the joint efforts of petitioner and his wife, and so the business grew. They later secured another business location and other persons were employed to do the actual repair work, under the supervision of petitioner. Mrs. Johns took over the office work and all bookkeeping necessary for the operation of the business while petitioner usually purchased and sold the cars. However, Mrs. Johns sometimes purchased and sold cars when he was absent. In any event, it is without dispute that petitioner was uneducated and could not have conducted the business without the help of his wife.[1]

---

[1] The Tax Court characterized the services performed by Mrs. Johns as "vital to the conduct of such business".

Mrs. Johns made all the financing arrangements necessary for the purchase and sale of the cars, and sometimes repossessed cars for the business. She often worked from early morning until 9:00 p. m. or 10:00 p. m. at night, and sometimes on Sundays. She gave her full time to the business from its inception through the tax year involved. Petitioner and Mrs. Johns lived in a house which was located on the lot where their used car business was conducted, and it was not necessary for Mrs. Johns to devote her time to domestic or household duties because she kept a maid who had been raised in the family and required no particular supervision.

There was no written partnership agreement between petitioner and Mrs. Johns, but they had an oral understanding that they would engage in this used car business together, and that all profits would be divided between them "fifty-fifty". The record shows that they held themselves out to the public, and described themselves, as partners. On June 8, 1936, they filed an intangible property tax return, in which they stated: "This is a co-partnership composed of Lee Johns and Ruby Johns, doing business as Lee Johns Motor Company". On July 13, 1938, they filed a report with the Florida Industrial Commission, relating to workmen's compensation insurance, in which they referred to the business as "Lee Johns & Ruby Johns operating as Lee Johns Motor Company". They carried business insurance in the name of "Lee Johns & Ruby Johns, d/b/a Lee Johns Motor Company". Their contracts with a financing company described the business as "Lee Johns and Ruby Johns, his wife, trading and doing business as Lee Johns Motors'. Other instruments and papers pertaining to the business were usually signed by Mrs. Johns as "Partner". The letterheads of the business also revealed that the business was a joint operation, and not a sole proprietorship. From 1933 until some time in 1940 the business was conducted under the name of "Lee Johns Motor Company". That designation appeared at the top of the letterheads with "Lee Johns, President" printed in the upper left-hand corner and "Ruby Johns,

Secretary-Treasurer", printed in the upper right-hand corner. In 1940 petitioner and his wife were informed that they could not use the word "Company" in their letterhead unless they were incorporated, whereupon the name of the business was changed to "Lee Johns Motors", and the names of "Lee Johns" and "Ruby Johns" were carried in the upper right and left corners of the business stationery. A corresponding change was also made in the bank account, and after the year 1940 the account was carried in the name of "Lee Johns Motors". Prior to 1940, both petitioner and his wife were authorized to draw checks on the bank account, but after that year, at Mrs. Johns' suggestion, Mr. Johns alone was authorized to draw funds from the bank because of a personal argument between them which had no relation to the business. Moreover, it is without dispute that a large amount of cash was kept in a safe at the place of business due to the fact that it was easier to purchase cars with cash than by giving checks, and Mrs. Johns kept the keys to this safe and had complete charge of the cash therein, which frequently amounted to more than the funds on deposit at the bank. Up until and including the tax year in question Mrs. Johns was not well versed in the income tax laws, and gave little consideration as to how the income from the business should be reported. After an agent of the Bureau of Internal Revenue began an examination of petitioner's 1943 return, which had been filed on a partnership basis, a certified public accountant, who was employed to advise petitioner and his wife as to their tax liability for that year, made an investigation of the books and the business and concluded that the business had always been a co-partnership within the meaning of the Internal Revenue Code. In any event, there is abundant evidence in the record which shows that petitioner and his wife owned and operated the business jointly.

■■ We are of opinion the Tax Court erred in holding that petitioner had not met his burden of proving that a *bona fide* partnership for tax purposes existed between petitioner and his wife during the

472

taxable year 1943. This is not the type family partnership case where a husband, after building up a going and prosperous business, undergoes the legal formalities of making his wife a partner merely for the purpose of reducing his own income taxes. In this connection, the Tax Court itself found that Mrs. Johns contributed both "original capital" and "vital services" to the used car business from the time the business was started in 1933, ten years before the tax year in question, and that she devoted her full time to the business during all that time under a *bona fide* agreement and understanding with petitioner to share the profits. The fact that the partnership agreement was a mutual verbal understanding between petitioner and his wife, and not reduced to writing, would not preclude the existence of a *bona fide* partnership for tax purposes provided other requisite elements are present. See Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679.

We find no substantial evidence in this record to support the finding of the Tax Court that the parties regarded the petitioner as the sole owner of the business. This conclusion is based upon purely circumstantial evidence and inferences deduced therefrom, and is contrary to the unimpeached and uncontradicted testimony of the parties, as well as to what they said and did in holding themselves out to the public as partners long before this tax controversy arose, and when they could not possibly have had federal tax consequences in mind. Moreover, as the Tax Court has held, the fact that petitioner had previously reported the income of the business in his own return is not conclusive evidence that no partnership existed, because it is without dispute that they had no "especial experience or advice in tax matters" and "it would have been an easy matter to overlook the desirability of one form of reporting income over another". Estate of Frederick A. Depue, 13 T.C. 463. It is common knowledge that persons owning and operating a business may be competent to keep memorandum records and books of account, and participate in the conduct and management of such business, and yet not know what the income tax laws require with respect to the proper manner of reporting the income from such business. Otherwise, there would be little need for public accountants and other tax experts.

We conclude that since the wife here contributed capital and services with the understanding that she would receive half of the profits, and since the record reveals a *bona fide* intention on the part of both parties to enter into a valid partnership for all purposes, it follows that Mrs. Johns was a partner within the meaning of the Internal Revenue Code, and is taxable upon her half of the partnership income. Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210; Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Title 26 U.S.C.A. §§ 22, 181, 182, and 3797; see also, Florida Citrus Exchange v. Grisham, 65 Fla. 46, 61 So. 123; Porter v. Taylor, 64 Fla. 100, 59 So. 400.

The decision of the Tax Court is erroneous, and the same is hereby reversed.